United States District Court
Southern District of Texas

**ENTERED**

September 30, 2016

David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF TEXAS

## GALVESTON DIVISION

| | | |
|---|---|---|
| SABRINA VINCENT | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. G-14-048 |
| | § | |
| COLLEGE OF THE MAINLAND | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Before the Court, with the consent of the parties, is Defendant College of the Mainland's Amended Motion for Summary Judgment.[1]  (Dkt. No. 25).  Plaintiff Sabrina Vincent filed a Response (Dkt. Nos. 29-38) to which Defendant filed Objections and a Reply (Dkt. No. 42), and Plaintiff filed a Response to Defendant's Objections.  (Dkt. No. 45).  Having given careful consideration to the submissions and the relevant law, the Court now issues this Opinion and Order in which it grants Defendant's Motion and dismisses this action in its entirety.

## I. BACKGROUND

Sabrina Vincent (Vincent) sued her former employer, the College of the Mainland (COM), claiming that she was subjected to discrimination and retaliated against in the workplace.

The relevant facts are largely undisputed and no material facts are disputed.  Vincent

---

[1] COM initially filed a Motion for Summary Judgment (Dkt. No. 14), but then filed an Amended Motion for Summary Judgment.  (Dkt. No. 25).

worked at COM as a computer lab assistant[2] since 2004. While Vincent spent her first four years at COM as a part-time employee, her supervisor, Janis Cutaia (Cutaia), recommended her promotion to a full-time position. In 2008, Vincent was made a full-time employee. Following the change in her classification, Vincent experienced a number of personal tragedies that prompted her to take leave in 2008 and then again in 2009.[3] (Dkt. No. 14, Ex. A at 22; Ex. B at ¶¶4, 5). However, approximately eight months after Vincent returned to work, Cutaia noticed issues with tardiness and addressed her concerns with Vincent.[4] Vincent responded that she was experiencing "personal issues" and, without elaborating, stated that she was under a doctor's care.[5] (Dkt. No. 25, Ex. A at 35-36; 37-38; Dkt. No. 29 at 6).

According to Cutaia, Vincent's problem with tardiness persisted, but she refrained from writing her up. Instead, after consulting with Human Resources (HR), Cutaia sought to make Vincent more accountable by directing her to report in when she arrived at work and to call or email if she was running late. Despite her directive, the problem persisted which prompted Cutaia to take additional measures. In early February 2012, Cutaia informed Vincent that she had

---

[2] As a lab assistant, Vincent was primarily responsible for providing instructional assistance to students, faculty, and staff who utilized the computer lab. (Dkt. No. 14, Ex. B-5). Additional duties included maintaining department records, files and inventory and assisting with registration. (*Id.*).

[3] Vincent's mother suffered a stroke in 2008, and she took leave without pay from November through December 2008. (Dkt. No. 29 at 5). In June 2009, Vincent's husband was diagnosed with terminal liver cancer and Vincent received a leave of absence from June through October 31, 2009. Over the course of her FMLA leave, both Vincent's mother and her husband passed away. (*Id.* at 6).

[4] Vincent has acknowledged that she had been tardy a few times every month in 2010. (Dkt. No. 14, Ex. A at 41).

[5] Vincent began suffering from severe depression in or around June 2010, but she did not disclose the nature of her "personal issues" to Cutaia at that time. (Dkt. No. 25, Ex. A at 38-40, 55).

2

decided to move Vincent's office space out of the networking area and into an office with a co-worker that was closer to Cutaia's own office. (Dkt. No. 14, Ex. A at 28-29; Ex. B at ¶6; Ex. B-1; Dkt. No. 25, Ex. D at 36).

On February 22, 2012, Vincent was late arriving to work and had failed, as directed, to call or email Cutaia to advise her of that fact. When Vincent arrived, Cutaia approached her in the hallway and, according to Vincent, in a loud and demeaning voice started accusing Vincent of being late for work, cautioning her not to lie to her about not being late, and commenting that she was effectively "stealing time" from COM. (Dkt. No. 14, Ex. A at 34-36). Vincent responded to Cutaia's comments – again without elaborating – by stating that they had talked about this before in 2010.

Approximately one week later, Vincent filed a grievance alleging that Cutaia was a "racist" because Cutaia had yelled at her in the hallway for being late to work and accused her of "stealing company time." (Ex. A at 32, 34-35, 45-46; Ex. A-1). The grievance was investigated by Lonica Bush (Bush) in accordance with standard procedure and, ultimately, found to lack merit – a determination that was upheld upon subsequent review. Nevertheless, during the course of the investigation Vincent disclosed that she was under medical care for depression and anxiety and, while her condition had no impact on her ability to perform her duties, it did affect her ability to show up at work on time. (Dkt. No. 14, Ex. A at 36; Ex. B at ¶9; Dkt. No. 25, Ex. A at 36, 40).

On May 12, 2012, Bush and Cutaia met with Vincent to discuss possible accommodations that could be made in the department to accommodate Vincent's disability. (Dkt. No. 29, Ex. 26). Following the meeting, Bush informed Vincent that COM agreed to alter her work schedule and allow her to report to work later; however, it informed Vincent that to do so, it was necessary to

3

re-assign Vincent to the Academic Success Lab and the Math and Science Lab (hereinafter, "Academic Success Lab") and that the change would be implemented effective May 14, 2012. (Dkt. No. 29, Ex. 25). Bush also clarified to Vincent that she was permitted – as all employees were – to submit leave slips when she was late so that her pay would not be docked. Notwithstanding the accommodation, Bush reiterated to Vincent that she was still required to report in – either by phone or email – when she was going to be late, provide an accurate time of her arrival and to notify her supervisor when she arrived. Although Vincent requested that COM accommodate her scheduling needs without a change in her lab assignment (Dkt. No. 29 at 9-10, Ex. 25), Bush explained to her that this could not be done without causing undue hardship on the Department and other employees. Bush also reassured Vincent that her essential responsibilities would remain the same and "the only change is where you perform those duties and responsibilities." (Dkt. No. 29, Ex. 25).

In early June 2012, Vincent was absent from work due to illness. After she missed three consecutive days of work, Vincent was provided with a Notice of Eligibility for FMLA leave. Vincent requested FMLA leave, which COM approved, because she had scheduled surgery to remove a lesion on her face. On June 28, 2012, Vincent was released back to work. Upon her return, Vincent resumed her job with no differences in pay or benefits.

Within days after returning to work, Cutaia notified Vincent of her expectations. In particular, Cutaia informed Vincent that she expected her to spend the majority of her work shift in the Academic Success Lab, as opposed to her office, in order to ensure that she was available to assist faculty and students on the computers. In addition, Cutaia reiterated to Vincent that she was still expected to notify her, in advance, if she was going to be late and to provide an expected

4

arrival time so that Cutaia could ensure that the Academic Success Lab would have proper coverage. (Dkt. No. 25, Ex. A at 71-72; Ex. A-6).

Despite the directive, Cutaia reported that Vincent only sporadically notified her of her tardiness and Cutaia had documented twelve (12) instances in which Vincent reported late to work. (Dkt. No. 25, Ex. A at 80, 84; Ex. A-7). On August 24, 2012, Cutaia issued Vincent a Level One Form Conduct Correction Plan. (*Id.*, Ex. A-7). As set out in the Conduct Correction Plan, Cutaia once again instructed Vincent to contact her before the scheduled arrival time if Vincent was running late, to give an accurate estimate of her arrival, to call from her desk when she arrived and to complete a "Request for Leave" form upon arrival each day that she reported late to work. (*Id.*, Ex. A at 86-88; Ex. A-7). Vincent, who felt the scrutiny was unwarranted, refused to sign the Plan. (*Id.*, Ex. A at 42, 85-87, 89-90; Ex. A-7).

On November 16, 2012, Cutaia issued Vincent a Level Two Conduct Correct Plan. This Conduct Correction Plan, which was similar to the previous plan, also addressed issues related to performance.[6] As set forth in this Conduct Correction Plan, Vincent was directed to do the following: communicate with her supervisor and co-workers; call or email when she was running late and to provide an reasonably accurate time of arrival; comply with the Department location process; spend work hours in the lab; comply with work duties; work cooperatively with her co-worker regarding the lab schedule; and complete accurate inventory and monthly reports. (Dkt.

---

[6] This Conduct Correction Plan documented the following performance issues: (a) Vincent continued to spend considerable time in her office as opposed to in the lab with students and/or faculty; (b) an instructor submitted a complaint regarding the lab; and (c) in late October 2012, Cutaia discovered that Vincent failed to utilize computer equipment that was purchased in 2010, and, instead, placed the equipment in storage. (Dkt. No. 25, Ex. A at 101; Ex. A-8).

5

No. 25, Ex. A-8; Ex. B at ¶15).

After the Level Two Conduct Correction Plan was issued, Vincent submitted a grievance to COM. In her November 30, 2012 grievance, Vincent claimed that she was being subjected to race, sex and disability discrimination and retaliation. (*Id.*, Ex. A-9). On the same date, Vincent submitted a formal charge of discrimination to the EEOC and the Texas Workforce Commission. (Dkt. No. 25, Ex. A-15). As reflected in the EEOC charge, Vincent checked the boxes reflecting that she was subjected to race, sex and disability discrimination, and to retaliation. Vincent alleged that the Level II Conduct Plan was done in retaliation for her filing her grievance concerning the race and gender-based discrimination and for requesting an accommodation under the ADA. (*Id.*).

COM assigned Bush to investigate Vincent's grievance and, on January 10, 2013, Bush determined that the evidence was insufficient to support her claims of discrimination and retaliation. (Dkt. No. 25, Ex. A-10). As set forth in her decision, Bush determined that the change in Vincent's work schedule and work-site location was necessitated by her request for reasonable accommodation and that, while the lab she was assigned had changed, Vincent's essential job duties had not changed. In addition, despite the accommodation, Bush determined that Vincent had been previously informed that she would still need to report in if she was going to be late and provide an accurate estimation of the time of her arrival. Finally, while acknowledging that Vincent's co-worker, Larry Click, had made an inappropriate comment to her,[7] Bush determined that Click was given an appropriate reprimand and that there were no prior

---

[7] On or before July 23, 2012, Vincent complained that her co-worker, Larry Click, made a derogatory and, in her view, racist comment to her about carrying a tape measure. After Vincent reported the incident to her supervisor, Cutaia confronted Click about it and directed him to apologize to Vincent for his comments. (Dkt. No. 25, Ex. D at 48).

6

or subsequent incidents with him. (*Id.*).

On June 13, 2013, Cutaia issued Vincent a Level Three Form Conduct Correction Plan. (Dkt. No. 25, Ex. A at 126-127; Ex. A-11). As set forth in this Conduct Correction Plan, Vincent was reportedly either late or absent every day from January to April 2013;[8] she failed, as directed, to call or email in advance and to provide accurate estimations of her arrival time so that the Department could arrange for proper coverage for the lab until she arrived (*Id.*, Ex. A-11); she continued to spend excessive amounts of time in her office rather than the lab; she refused to collaborate with her co-workers to ensure that the lab ran efficiently; and she ignored her duties by playing games on the internet or on a portable game player. (*Id.*). Vincent was urged to take the corrective actions and she was also directed her to attend all departmental meetings. (*Id.*, Ex. A at 132-34; Ex. A-11; Ex. B at ¶16).

On July 12, 2013, Vincent was issued a Level Four Form Conduct Correction Plan, which resulted in the termination of her employment with COM. (Dkt. No. 25, Ex. A at 134-35, 136-137; Ex. A-12). Approximately one week after her termination, Vincent submitted a grievance to COM and alleged that she had been discriminated against based on race and sex and that she was terminated in retaliation for exercising her rights under the ADA and FMLA. An investigation followed, however, the grievance was found to be lacking in merit. As a result, the decision to terminate Vincent's employment was upheld and she did not appeal the decision.

On September 12, 2013, Vincent submitted an amended charge of discrimination with the EEOC. In the charge, Vincent checked boxes that reflected she was alleging retaliation, disability

---

[8] Vincent has acknowledged that she was frequently absent or tardy during this time, but she could not confirm the extent of her tardiness. (Dkt. No. 25, Ex. A at 127:7-21).

discrimination and "other" (*i.e.*, FMLA). Vincent alleged that her termination was improper and it was inconsistent with the accommodation to her condition because, at the time she was fired, she had leave time remaining. (Dkt. No. 25, Ex. A-16). The EEOC subsequently issued Vincent a right to sue letter.

On February 17, 2014, Vincent initiated this action against COM. Bringing her claims under Title VII, the Americans with Disabilities Act (ADA), and the Family Medical Leave Act (FMLA), Vincent alleges that COM discriminated against her based on race, gender and disability and subjected her to retaliation for exercising her rights under those statutes.[9] Defendant COM has moved for summary judgment and argues that dismissal is warranted due to the following: Vincent did not exhaust her sex or race-based wrongful discharge claims; she cannot establish a *prima facie* case of discrimination based on race, sex or disability; she cannot establish a *prima facie* case of retaliation under Title VII, the ADA or the FMLA; it has articulated a legitimate, non-discriminatory and non-retaliatory reason for terminating Vincent's employment; and that she cannot demonstrate pretext. (Dkt. No. 25). Following submissions by the parties (Dkt. Nos. 29-39; 42; 45), the Defendant's motion is now ripe for consideration.

## II. STANDARD OF REVIEW

The Court analyzes Defendant's Motion under the well-established summary judgment standard. Fed. R. Civ. P. 56(c); *see generally, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986);

---

[9] Notably, any "claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5ᵗʰCir.1990)); *Waters v. City of Dallas*, No. 3–11–CV–0540–K, 2012 WL 5363426, at \*22 (N.D.Tex. Nov. 1, 2012), *aff'd*, 540 Fed.Appx. 257 (2013); *Brook v. Equilon Enters. LLC*, No. 4:09–CV–02418, 2011 WL 13658, at \*10 (S.D.Tex. Jan. 3, 2011)

8

*Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999); *United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992).

## III. DISCUSSION

### A. Discrimination Claims

Vincent contends that COM, in violation of Title VII[10] and the ADA,[11] discriminated against her based on her race, gender[12] and disability.[13] Under either statute, a plaintiff can establish her discrimination claims either by direct or circumstantial evidence. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999). In the absence of direct evidence,[14] the plaintiff's discrimination claims are

---

[10] Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits employers from discriminating against an employee on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e *et seq.*; *Fitzgerald v. Sec'y, U.S. Dept. of Veterans Affairs*, 121 F.3d 203, 206 (5th Cir. 1997).

[11] The Americans With Disabilities Act (ADA) prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

[12] There is no need to address the gender-based claim since Vincent has since clarified that she is not pursuing and/or has abandoned the claim. (Dkt. No. 25, Ex. A at 108-109; Dkt. No. 29 at ¶31, n.37).

[13] The Court pauses to note that this is not a case involving a failure to accommodate. On the contrary, the undisputed evidence reflects that after Vincent disclosed her disability, COM engaged in the interactive process and after considering Vincent's needs and the needs of the department, Vincent was assigned to the Academic Success Lab to make it possible for Vincent to arrive at work later because Click was able to work in the earlier shift in this lab. (Dkt. No. 25, Ex. 7 at 3-4, ¶10). COM's accommodation was reasonable in light of the scheduling issues. *Griffen v. United Parcel Serv. Inc.*, 661 F.3d 216, 224 (2011). Although the reassignment to a different lab to accommodate Vincent's disability might not have been the accommodation she preferred, this does not transform the accommodation into adverse employment action. *Id.*; *EEOC v. Agro Distrib. LLC*, 555 F.3d 462, 471 (5th Cir. 2009).

[14] Direct evidence cases are exceeding rare and this case is no exception. While Vincent might be heard to argue that direct evidence of racial discrimination exists (*i.e.*, Cutaia's comment that Vincent was "stealing time" from her employer and/or Click's comment that she had a "big ass"), it would fall woefully short of proving discriminatory animus without inference or presumption. *See Sandstad*, 309 F.3d at 897; *Jones v. Overnite Transp. Co.*, 212 Fed.Appx. 268, 274 (5th Cir. 2006). In terms of her disability discrimination claim, Vincent concedes that she relies on circumstantial evidence. (Dkt. No. 29 at 35).

properly analyzed under the *McDonnell Douglas* burden shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973); *Cannon v. Jacobs Field Servs. NA, Inc.*, 813 F.3d 586, 590 (5th Cir. 2016); *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009); *Seaman*, 179 F.3d at 300; *Owens v. Calhoun County Sch. Dist.*, 546 Fed.Appx. 445, 448 (5th Cir. 2013).

As modified, the *McDonnell Douglas* framework consists of three stages. First, the plaintiff must establish a *prima facie* case of the violation, which creates a presumption that the employer subjected her to unlawful discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Second, if the plaintiff establishes a *prima facie* case, the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the employment action taken against her. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993); *EEOC v. LHC Grp. Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). The employer's burden is one of production, not proof, and involves no credibility assessments. *See, e.g.*, *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5thCir. 2003). Third, if the employer meets its production burden, then to survive summary judgment the plaintiff must "offer sufficient evidence to create a genuine issue of material fact" of discriminatory motive. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *see also, Chevron Phillips Chem. Co.*, 570 F.3d at 615; *LHC Grp. Inc.*, 773 F.3d at 694.

Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden – albeit not a substantial one – of making a *prima facie* showing of discrimination. *Id.* To establish a *prima facie* case of discrimination, the plaintiff must show: (1) she is a member of a protected group;

10

(2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) non-protected employees were treated differently or given preferential treatment under "nearly identical" circumstances. *Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003) (Title VII and §1981 claims); *Okoye v. Univ. of Tex. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (Title VII claim); *McCollum v. Puckett Mach. Co.*, 628 Fed.Appx. 225, 2015 WL 5817650, at *3 (5th Cir. Oct. 6, 2015) (ADA claim); *Mesa v. Verizon Business Network Servs., Inc.*, No. 3:10-CV-2324-D, 2012 WL 3452696, at *2 (N.D.Tex. Aug. 14, 2012) (ADA claim).

COM does not dispute that Vincent can demonstrate the first and second elements of her *prima facie* discrimination claims; and COM only partially disputes the fourth element of her *prima facie* disability discrimination claim.[15] In addition, COM does not dispute that Vincent's termination constitutes an adverse employment action for purposes of satisfying the third element of her *prima facie* discrimination claim; however, COM argues that her termination is the only actionable action. The Court agrees. In cases involving discrimination claims,[16] the Fifth Circuit continues to hold that adverse employment actions include only ultimate employment decisions. *Thompson v. City of Waco*, 764 F.3d 500, 503–04 (5th Cir.2014); *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 456 n. 2 (5th Cir.2011); *Pegram v. Honeywell, Inc.*, 361 F.3d 272. 282-83

---

[15] In its Motion, COM melds the protected classes together and argues that Vincent cannot show she was treated less favorably than other similarly situated *non-disabled* employees. (Dkt. No. 25 at 16-17). While relevant to Vincent's *disability* discrimination claim under the ADA, it overlooks her protected classes under Title VII (*i.e.*, race and, to the extent it were not abandoned, gender).

[16] *But see, Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (broadening the definition of adverse employment action for *retaliation claims* from "ultimate employment decisions" to actions that might dissuade a reasonable employee from making or supporting a charge of discrimination); *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (reasoning that the Supreme Court's holding in *Burlington* applies solely to retaliation claims).

11

(5th Cir. 2004) (adverse employment decisions in the context of an ADA discrimination claim are limited to ultimate employment decisions). Ultimate employment decisions are generally limited to such actions as "hiring, granting leave, discharging, promoting, and compensating." *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002). Thus, with the exception of her termination, none of the actions of which Vincent complains involve the sort of ultimate employment decisions which are actionable.[17] Although a re-assignment or transfer to another area can constitute an adverse employment action in some situations, this is simply not one of those cases because there was "no objective showing of a loss in compensation, duties, or benefits," nor was there a significant difference in responsibilities. *Pegram*, 361 F.3d at 283; *see also*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (actionable adverse employment actions are generally limited to tangible employment actions that constitute a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or

---

[17] *See e.g.*, *King v. Louisiana*, 294 Fed.Appx. 77, 85 (5th Cir. 2008) ("allegations of unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation"); *Searle v. Aramark Corp.* 247 Fed.Appx. 519, 524 (5th Cir. 2007) (disciplinary write-ups and alleged retaliatory micro-managing of plaintiff's performance do not constitute materially adverse employment actions); *Grice v. FMC Techs. Inc.*, 216 Fed.Appx. 401, 404, 407 (5th Cir. 2007) (allegations that employee was watched more closely than other employees was not actionable adverse employment action); *Fortenberry v. Texas*, 75 Fed. Appx. 924, 927 (5th Cir. 2003) (a written reprimand does not constitute an "ultimate employment decision" required to demonstrate a *prima facie* case of discrimination); *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 554-55 (5th Cir. 1997) (assigning undesirable work assignments is not adverse employment action); *Hamilton v. Tex. Bd. of Crim. Justice*, 206 F.Supp.2d 826, 838 (S.D. Tex. 2001) (undesirable work assignments and being excluded from meetings, projects or decisions are not ultimate employment actions); *Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, at *13 (N.D.Tex. Dec. 12, 2008) ("receiving a warning letter is not an adverse employment action"). Nor does the combined weight of the conduct of which Vincent complains approach the gravity of these types of actions because there is no genuine dispute that Vincent's duties, compensation, and benefits were not altered. *Rubinstein v. Administrators of Tulane Educational Fund*, 218 F.3 392, 399 (5th Cir. 2000).

a decision causing a significant change in benefits").[18]

For purposes of this Motion, the Court will assume, without deciding, that Vincent has made a *prima facie* showing of discrimination under these Acts. The burden, therefore, shifts to COM to articulate a legitimate, non-discriminatory reason for its decision to terminate Vincent's at-will employment. *See Price v. Federal Exp. Corp.*, 283 F.3d 715, 720 (5th Cir.2002) ("[i]f the defendant articulates a reason that can support a finding that its actions were nondiscriminatory, the mandatory inference of discrimination created by the plaintiff's prima facie case drops out"). COM has explained that its decision was based on Vincent's failure to comply with her supervisor's directives throughout the first three levels of COM's disciplinary policy (Dkt. No. 25, Exs. A-7, A-8, A-11; Ex. B at ¶¶14-17) and, when her continued failure to comply and remediate her behavior resulted in her progressing to the fourth level, this then required immediate termination of her employment. (Dkt. No. 25, Ex. A-12; Ex. B at ¶17). COM's reasons, if believed, are legitimate, non-discriminatory reasons for terminating Vincent's employment. *See e.g., Taylor v. Peerless Ind.,* Inc., 322 Fed.Appx. 355, at *6 (5th Cir. 2009) (an employee's failure to comply with management's directives concerning his job performance was legitimate, non-discriminatory reason for his termination); *Williams v. AT&T, Inc.*, No. H:07-CV-0559, 2009 WL 938495, at *20 (S.D.Tex.), *aff'd*, 356 Fed.Appx. 761 (5th Cir. 2009) (employee's termination, which resulted from progressive discipline pursuant to company policy, was a legitimate reason for termination). At this juncture, the burden shifts back to Vincent who bears

---

[18] The Court is aware that Vincent has submitted an affidavit stating that her responsibilities and duties changed when she was re-assigned. Problematically, however, these statements contradict, without explanation, her deposition testimony in which she expressly acknowledged that her principle responsibilities/duties did not change. (Dkt. No. 25, Ex. A at 66-68). *See Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir.1984) (addressing sham affidavits).

13

the ultimate burden of persuading the trier of fact by a preponderance of the evidence that COM's reasons for discharging her were pretextual, or to show that the decision to terminate her employment was motived by her race and/or disability. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *Pinkerton v. Spellings*, 529 F.3d 513, 518-19 (5th Cir. 2008) ("motivating factor" test applied to ADA discrimination claim); *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 701-02 (5th Cir. 2014); *Mesa*, 2012 WL 3452696, at \*3.

In an effort to survive summary judgment, Vincent appears to rely on the pretext alternative. Under this approach, Vincent may satisfy her burden by showing disparate treatment. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (a plaintiff may establish pretext by presenting evidence that the proferred reason was untrue or by presenting evidence of disparate treatment). Disparate treatment occurs where an employer treats one employee more harshly than other "similarly situated" employees for "nearly identical" conduct. *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). Vincent appears to identify two other employees as comparators – Brad Traylor and Larry Click. In terms of Traylor -- Caucasian male, who also suffered from depression – Vincent maintains that he was out for two periods of time due his depression, but she contends that he "was not scrutinized the way [she] was" when he returned to work. (Dkt. No. 25. Ex. A at 115-116). The difficulty Vincent has with identifying Traylor as a comparator for purposes of her disability discrimination claim is that, having a disability himself, Traylor falls within the same protected class as Vincent. *See Felder v. Winn-Dixie La., Inc.*, No. Civ.A. 03-1438, 2004 WL 764189, at \*6 (E.D.La. April 7, 2004) (the employees identified were not proper comparators because they were members of the same protected class as plaintiff). Additionally, unlike Vincent, there is no evidence Traylor ever requested an

14

accommodation. (Dkt. No. 25, Ex. D at 61-64). Furthermore, with regard to her race discrimination claim, unlike Vincent, there is no evidence that Traylor had leave or attendance issues similar to Vincent's or that he failed to comply with supervisory directives which would then have resulted in progressive discipline and/or termination.[19] *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5ᵗʰ Cir. 2001) (holding that "the conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer"); *Okoye*, 245 F.3d at 514-15 (employees with different disciplinary records are not nearly identical); *Trotter v. BPB Am., Inc.*, 106 Fed.Appx. 272, 276-77 (5ᵗʰ Cir. Aug. 4, 2004) (concluding that white employees who engaged in fights with other employees were not similarly situated to plaintiff who was fired for insubordination based on conduct that included "mouthing off" and fighting with a member of management); *St. Romain v. Ft. Bend Cnty. Sheriff's Office*, No. H-09-2273, 2011 WL 306411, *3 (S.D. Tex. Jan. 27, 2011) (recognizing that employees who engage in dissimilar conduct are not "similarly situated).

The Court turns to Click, who is a Caucasian male. Although not clear from her submissions, Vincent can be heard to argue that Cutaia treated Click more favorably than her and, in support, Vincent points to an instance when Click was not disciplined despite the inappropriate and allegedly racist comment he made to her in late July 2012.[20] However, because the conduct involved is not similar, Click is not an appropriate comparator. *See Wallace*, 271 F.3d at 221 (recognizing that employees are not substantially similar when the conduct involved is different).

---

[19] Vincent also concedes that she was unaware of what consequences Traylor faced when he was allegedly tardy (Dkt. No. 25. Ex. A at 115-116).

[20] *Supra* note 7.

15

Thus, insofar as Vincent attempts to establish pretext through evidence of disparate treatment, she fails for lack of an appropriate comparator. *See Edwards v. Grand Casinos of Miss. Inc.*, 145 Fed. Appx. 946, 948 (5th Cir. 2005) ("[e]mployees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct."); *Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 213 (5th Cir. 2004) (the inquiry focuses on whether that action elicited the same or a different response from the employer with the alleged comparator).

Under the pretext approach, a plaintiff may also show that the employer's "preferred explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Wallace*, 271 F.3d at 221). The focus of the inquiry is on whether the employer's explanation, acccurate or not, is "the real reason" for firing an employee. *Id.* at 579; *see also, Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (cautioning that "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."). A plaintiff must produce evidence, viewed in a light most favorable to her, that would permit a jury to believe that the employer's proffered reason for the adverse employment action was not its true reason, but simply pretext for a racially discriminatory reason. *Id.* Such rebuttal evidence, combined with the *prima facie* case, will suffice to create a genuine issue of material fact such that summary judgment is inappropriate.

Here, Vincent posits numerous arguments in an effort to show that the reasons COM gave for firing her are false.[21] Ultimately, however, she fails to present any competent evidence[22] that

---

[21] The difficulty with the majority of Vincent's arguments is that they are unsupported by evidence and lacking in merit. For example, Vincent argues that COM changed its rationale for making its adverse employment decision. An employer's changing rationale for its adverse employment action can be evidence of pretext (*Thurman v. Yellow Freight Sys. Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996)), however,

16

the reasons she was placed on Disciplinary Level Four (*i.e.*, repeated absenteeism without proper notice, failure to attend Departmental meetings, failure to comply with her supervisor's directives) were untrue. Because Vincent is unable to establish that the proffered reasons for her termination was untrue, she is merely left with her own subjective beliefs that her race and/or disability played a role in COM's decision to terminate her employment, which is insufficient to overcome summary judgment. *See Dees v. United Rentals N. Am., Inc.*, 505 Fed.Appx. 302, 306 (5th Cir. 2013) (an employee's "subjective belief that [employer] discriminated against him is clearly insufficient to demonstrate pretext").

Finally, and to the extent urged, Vincent would fare no better under the mixed-motive alternative. To demonstrate mixed-motive, a plaintiff must present evidence capable of establishing that defendant's stated reason for her discharge "while true, is only one of the reasons for [her employer's] conduct, and another 'motivating factor' is [plaintiff's] protected characteristic [s]." *Vaughn*, 665 F.3d at 636. To prove discrimination in a mixed-motive case, direct evidence of discrimination is not required (*Desert Palace, Inc. v. Costa*, 539 U.S. 90

---

the evidence in this case simply does not support this argument. In addition, Vincent claims that she was always "deemed a good employee," but after she requested an accommodation, she was placed "under the proverbial microscope for each and every move." (Dkt. No. 29 at 47). Despite her allegations, the undisputed evidence reflects that Cutaia's efforts to address Vincent's job performance pre-dated her request for accommodation (*e.g.*, in early February 2012, Cutaia re-assigned Vincent's office to one near her own after several occasions arose where she could not find Vincent and her new office was located in an adjacent hallway to Cutaia's; later in February 2012, Cutaia reprimanded Vincent in the hallway about her continued tardiness and failure to inform Cutaia ahead of time to let her know she was running late). Vincent also effectively argues that COM was wrong or mistaken in its view that her conduct violated its policies (*e.g.*, using a hand-held device, sleeping on the job, and failing to set up computer equipment), however, this is insufficient, absent any evidence of discriminatory motive, to establish that COM's proffered reasons were merely pretextual. *Dismuke v. City of Indianola*, 32 Fed.Appx. 126, 2002 WL 334618, at *3 (5th Cir. Feb. 11, 2002). Finally, Vincent suggests that COM's reasons were pretextual because when she was terminated she had unused leave time remaining. Even accepting this as true, this does little to excuse her from failing to comply with her supervisor's directives to remediate her behavior.

[22] *See* Dkt. No. 42.

17

(2003)), however, some competent evidence must exist in the record from which a reasonable jury could draw inferences and reasonably conclude that a motivating factor in COM's decision was Vincent's race or disability. Aside from Vincent's subjective beliefs, which will not suffice,[23] there is no evidence from which a reasonable jury could conclude that either her race or her disability was a motivating factor in COM's decision.[24]

Accordingly, Vincent has failed to raise a genuine issue of material fact that COM's legitimate, non-discriminatory reasons for terminating her employment were either pretextual or a motivating factor for intentional race or disability discrimination. COM is, therefore, entitled to summary judgment on Vincent's claims of discrimination under Title VII and the ADA.

## B. Retaliation Claims

Vincent also alleges that COM retaliated against her in violation of Title VII[25] and the ADA.[26] In the absence of direct evidence, claims of retaliation under these Acts are analyzed under the *McDonnell-Douglas* framework. *Wheat v. Florida Parish Juv. Justice Com'n*, 811 F.3d

---

[23] *See Lawrence v. Univ. of Tex. Med. Branch*, 163 F.3d 309, 313 (5th Cir.1999) ("a subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief."); *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 (5th Cir.1995) ("[B]ald assertions of … discrimination are inadequate to permit a finding that proscribed discrimination motivated [the defendant's] actions against [the plaintiff]."); *Hervey v. Miss. Dep't. of Educ.*, 404 Fed.Appx. 865, 870 (5th Cir. 2010) (same).

[24] Vincent concedes that Cutaia never even used any racially-oriented words toward her. Instead, the only evidence of discriminatory animus that Vincent offers – aside from her subjective beliefs – is the comment that Cutaia allegedly made to her about "stealing time" from COM and Click's comment about why she carried a tape measure, but this does not rise to the level of intentional discrimination.

[25] Title VII prohibits an employer from retaliating against an employee for engaging in protected activity. 42 U.S.C. § 2000e *et seq.*

[26] The ADA also prohibits retaliation. 42 U.S.C. § 12203(a). The Act provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." *Id.*

18

702,705 (5th Cir. 2016); *See also, Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004) (applying the traditional *McDonnell-Douglas* framework).

In order to make a *prima facie* showing of retaliation under the Act, a plaintiff must establish: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action. *Wheat*, 811 F.3d at 705; *Seaman*, 179 F.3d at 301; *Tabatchnik v. Continental Airlines*, 262 Fed.Appx. 674, 676 (5th Cir. 2008).

In moving for summary judgment, COM does not dispute that Vincent can demonstrate that she engaged in protected activity.[27] Instead, COM argues that much of what Vincent complains of – with the exception of her termination[28] – does not constitute adverse employment action. In *Burlington*, the Supreme Court determined that the scope of the anti-retaliation provision is not limited to conduct that constitutes "ultimate employment decisions," but instead "extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington Ne. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (rejecting the standard in *Mattern* to the extent it treated the anti-retaliation provision as forbidding only the limited category of "ultimate employment decisions" prohibited by the anti-discrimination provision); *Gubric v. City of Waco*, 262 Fed.Appx. 665, 667 (5th Cir. 2008) (*Burlington* applicable in ADA retaliation claim to determine if an employer took adverse action against an employee). The anti-retaliation provision protects

---

[27] There is no dispute that Vincent's filing of an internal discrimination complaint on February 28, 2012 and on November 30, 2012, as well as the EEOC charge and amended charge she filed on November 30, 2012 were protected activities. Additionally, there is no dispute that Vincent engaged in protected activity when she requested an accommodation, which COM provided in May 2012.

[28] It is also not disputed that an adverse employment action occurred when COM terminated Vincent's employment in July 2013.

an individual not from all retaliation, but from actions that a reasonable employee would have found materially adverse. *Burlington* at 67–68. "Material" employer actions are those "that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Id.* at 68 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)). Normally, however, petty slights, minor annoyances, and simple lack of good manners will not create such deterrence. *Id.*

In the present case, Vincent complains that she was subjected to several employment actions that were materially adverse. The Court agrees with COM that, with the exception of her termination, none of the actions about which Vincent complains rise to the level of a materially adverse employment action. For example, Vincent contends that she was micro-managed, her comings and goings were scrutinized, and she was "spied on" by her co-worker (Click); however, none of these constitute actionable retaliatory conduct because they fall into the category of "petty slights, minor annoyances, and simple lack of good manners" that employees regularly encounter in the workplace. *Burlington*, 548 U.S. at 68. Vincent also complains that she was treated poorly, verbally reprimanded and required to attend work meetings, but none of these alleged actions rise to the level of material adversity. *See e.g., Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484-85 (5th Cir. 2008) (allegations of being treated poorly and rudely are not enough as a matter of law to state a retaliation claim); *King v. Louisiana*, 294 Fed.Appx. 77, 85 (5th Cir. 2008) ("allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute adverse employment actions" for retaliation claims).

Vincent also points to her transfer or reassignment in May 2012 to the Academic Success

Lab to show she was subjected to a materially adverse employment action. A lateral reassignment to a position with equal pay could amount to a material adverse action in some circumstances, but this is not such a case.[29] *Cf. Washington v. Ill. Dep't of Rev.*, 420 F.3d 658, 662 (7th Cir. 2005) (finding a lateral transfer to be materially adverse where it impacted employee's flex-time schedule which was critical to care for her disabled child); *Kessler v. Westchester Cty Dep't of Soc. Servs.*, 461 F.3d 199, 209-10 (2d Cir. 2006) (finding a lateral transfer which did not impact job title, job grade, salary or benefits could be found materially adverse where employee demonstrated that he was stripped of significant responsibilities). While it is evident that Vincent did not prefer the change, there is no evidence that the transfer produced a change in her primary duties, her pay or other benefits. Furthermore, even though her specific tasks in the Academic Success Lab might have varied from those she performed in the prior computer lab, her duties remained consistent with that of a lab assistant – no more arduous or less prestigious – and were consistent with the description of the job duties of a Laboratory Assistant. *See Burlington*, 548 U.S. at 71 (noting that reassignment of job duties is not automatically actionable; material adversity of a reassignment "depends on the circumstances of a particular case.").

Finally, despite her bald allegations, there is no evidence that any of these actions dissuaded Vincent from making or supporting a charge of discrimination. *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945-46 (5th Cir. 2015) ("[t]he key question is whether the challenged action is materially adverse in that it is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination.").

---

[29] Vincent does not dispute that the reassignment, while not to her choosing, was the result of her request for accommodation.

21

Turning to the third element, COM argues that Vincent cannot make a *prima facie* showing of the existence of a causal link between the protected activity and the adverse employment action. The Fifth Circuit has recognized that the burden of establishing this "causal link" element of a *prima facie* case is much less onerous than the standard for proving "but for" causation required for the determination of the ultimate issue of retaliation. *See Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 n. 8 (5th Cir.1998); *Martin v. J.A.M. Distributing Co.*, 674 F.Supp.2d 822, 843-44 (E.D.Tex. 2009). Nevertheless, the more than seven (7) month period between Vincent's protected activity on November 30, 2012, and her termination on July 12, 2013, is too great of a delay to demonstrate a *prima facie* claim of retaliation. *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) (five month period between protected activity and adverse employment action did not establish *prima face* retaliation claim).

However, even assuming that Vincent could establish a *prima facie* claim for retaliation, the presumption would drop out because, as discussed, COM has articulated a legitimate, non-retaliatory reason for her termination. The burden would, therefore, shift back to Vincent to prove that she would not have suffered an adverse employment action "but for" engaging in the protected activity. *See Univ. of Tex. SW Med. Ctr v. Nassar*, _U.S._, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013) (abrogating *Smith v. Xerox Corp.*, 602 F.3d 310, by limiting the applicability of the mixed-motive analysis in cases involving Title VII); *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir.2012). Vincent simply cannot make this showing. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (emphasizing that the temporal proximity must be "very close" and favorably citing cases that held three and four month gaps in time were too large to establish causation); *Gonzales v. Dupont Powder Coatings USA, Inc.*, 546 Fed.Appx. 378, 379

22

(5th Cir. 2013) (finding passage of six months to be "too great a delay to support causation connection"); *Bell v. Bank of America*, 171 Fed.Appx. 442, 444 (5th Cir.2006) (seven-month lapse, by itself, did not demonstrate a causal link); *Harvey v. Stringer*, 113 Fed.Appx. 629, 631 (5th Cir.2004)(ten-month lapse, by itself, did not create casual link); *Raggs*, 278 F.3d at 471-72 (five month period between protected activity and adverse employment action did not establish *prima face* retaliation claim). Nor will Vincent's subjective beliefs suffice to overcome summary judgment. *Travis v. Bd. of Regents of the University of Tex. Sys.*, 122 F.3d 259, 266 (5th Cir. 1997). Accordingly, the Court concludes that summary judgment in favor of COM is warranted on Vincent's Title VII and ADA retaliation claims.

## C. Family Medical Leave Act

The Family Medical Leave Act of 1993 (FMLA) allows eligible employees working for covered employers to take temporary leave for medical reasons, among other things, without the risk of losing employment. 29 U.S.C. §2601(b)(1) and (2). The Act contains two distinct protections for employees which are referred to as prescriptive and proscriptive rights. *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999). In the present case, Vincent only alleges that her proscriptive rights under the Act were violated.[30] This claim analyzed under the

---

[30] Vincent has not alleged that her prescriptive rights were violated; however, even if she had, the claim would have no merit. *Cf. Nero*, 167 F.3d at 927. The undisputed evidence in this case reflects that Vincent requested and COM approved leave under the FMLA in 2009 and in June 2012 and, after each occasion, she was returned to the same position, with the same duties and pay, that she had before the leave. To the extent that Vincent would now attempt to refute that this occurred after she returned to work in late June 2012 (*see* Dkt. No. 29 at 39-40), her contentions find no support in the evidence.

*McDonald-Douglas* burden-shifting framework. *Wheat,* 811 F.3d at 705; *see also, Richardson v. Monitronics Int'l Inc.,* 434 F.3d 327, 332-36 (5th Cir. 2006).[31]

In terms of establishing a *prima facie* claim, COM does not contest the first two elements the *prima facie* case – namely, that Vincent engaged in protected activity by requesting leave under the FMLA in June 2012, and that COM's termination of her employment in July 2013 was an adverse action. Instead, COM contests the causal link between these two events. Despite considering the evidence in a light most favorable to Vincent as the non-moving party, the temporal proximity between the protected activity and the adverse employment action is not the "very close" temporal proximity required in this Circuit to constitute sufficient evidence to satisfy the *prima facie* burden under the FMLA. *Everett v. Central Miss., Inc. Head Start Program*, 444 Fed.Appx. 38, 46 (5th Cir. 2011) (quoting *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001). To the extent Vincent contends that her employment was terminated on July 12, 2013, because she exercised her FMLA rights almost a year earlier, no genuine issue of material fact exists that supports a causal connection between her termination and the exercise of her FMLA rights. *See id.*

---

[31] Considering that the anti-retaliation provisions in the FMLA and Title VII are similar, it might be argued that the mixed-motive analysis should no longer be applied to FMLA retaliation cases given the Supreme Court decisions in *Nassar,* _U.S._, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013), and *Gross v. FBL Fin. Serv., Inc.,* 557 U.S. 167 (2009). The Fifth Circuit has not yet determined whether the reasoning of *Gross* and *Nassar* applies to FMLA retaliation cases. *Ion v. Chevron USA, Inc.,* 731 F.3d 379 (5th Cir.2013) (applying mixed-motive analysis and noting that "we need not, and do not, decide whether *Nassar*'s analytical approach applies to FMLA-retaliation claims and, if so, whether it requires a plaintiff to prove but-for causation."). Thus, *Richardson* is still the law in this circuit and, as such the Court is bound to follow it and apply the mixed-motive framework to Vincent's claim. *See Mathis v. BDO USA, LLP,* 2014 WL 975706, at * 6 (S.D.Tex. March 12, 2014) (applying *Richardson* and mixed-motive standard to FMLA case "until a higher court says otherwise").

Notwithstanding, to the extent that Vincent could demonstrate a *prima facie* case of retaliation under the FMLA, COM has articulated a legitimate, non-discriminatory and non-retaliatory reason for terminating her employment and, as discussed, Vincent has not submitted any credible evidence that the reasons for terminating her were pretextual. *See Lorentz v. Alcon Labs. Inc.*, 535 Fed. Appx. 319, 326 (5th Cir. 2013) (employee failed to show that her employer's reason for terminating her was pretextual because nothing demonstrated that her supervisors cared that she had taken FMLA leave, rather than that she was failing to keep up with her work, and employee failed to show that she was not deficient in her work). Nor has she submitted any credible evidence that a retaliatory animus was a motivating factor in the adverse employment action. The Court, therefore, finds summary judgment warranted for COM.

## CONCLUSION

Accordingly, for all the foregoing reasons, it is the **ORDER** of the Court that Defendant College of the Mainland's summary judgment motion (Dkt. No. 25) is **GRANTED** and that the action filed by Plaintiff Sabrina Vincent is **DISMISSED with prejudice**.

**DONE** at Galveston, Texas, this _____30th_____ day of September, 2016.

JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE